UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARLOS CANTER | CIVIL ACTION |
| VERSUS | NO. 08-0343 |
| CLECO CORP., ET AL | SECTION "N" (3) |

**ORDER AND REASONS**

Plaintiff's Motion to Compel (Doc. #53) production of incident reports came on for hearing before the undersigned Magistrate Judge on March 25, 2009. Defendant claimed that the documents were privileged work-product, said reports having been prepared at the request of company's legal department. Pursuant to the hearing, the Court ordered the defendant to submit for *in camera* review the following, to wit: (1) the handwritten reports of linemen, Stephen Vedros and Scott Lewis; and (2) the depositions of both linemen and their supervisor, Michael Polk. In addition to the aforesaid documents, plaintiff's counsel submitted a reply brief with additional documents produced during discovery, a few of which were only recently produced. The issues before the Court include: (1) Whether the defendant has carried its burden of proof that the primary motivating purpose behind the creation of the linemen's handwritten reports was to aid in possible future litigation; and, if so, (2) whether the plaintiff has shown "substantial need" for information set forth therein which is not otherwise available. For the following reasons, the Plaintiff's Motion to Compel is GRANTED.

1

**BACKGROUND**

On January 14, 2008, plaintiff CARLOS CANTER (an Illinois domiciliary) filed this diversity suit against defendants, CLECO and the City of Covington, alleging negligence, *inter alia,* against both entities. Plaintiff claims that on or about September 14, 2007, he was walking on the sidewalk near the intersection of Boston St. and New Hampshire St. in the City of Covington, Louisiana, when suddenly and without warning an electrical wire fell, striking the plaintiff and knocking him unconscious. Plaintiff alleges that the renegade, *energized* wire was in the custody and control of and maintained by the defendants. Plaintiff further alleges that defendants had notice of the defective or deteriorated condition of the electrical line and failed to remedy it despite reasonable opportunity to do so. Plaintiff claims pain, suffering, electrical shock throughout his body, electrical burns to his head and face, constant headaches, resultant cognitive defects, medical expenses past and future, lost wages and loss of earning capacity.[1]

**PARTIES' CONTENTIONS**

On September 16, 2008, plaintiff served requests for production on CLECO. The particular request for production at issue (RFP No. 7) seeks production of any and all documents prepared as a result of the field investigation which was performed by CLECO or others contracted by CLECO, following the incident in which plaintiff was injured. Plaintiff contends that CLECO's objections based upon work product and attorney client privilege are not well founded. Plaintiff submits that the incident reports at issue were prepared in the ordinary course of business and are not protected by the cited privileges. Plaintiff's position is that the documents were prepared by CLECO employees/linemen (first responders) to the report of a

---

[1]Plaintiff's Complaint [Rec. Doc. No. 1].

downed wire and not by or under the direction of CLECO's counsel of record. Plaintiff further argues that the reports do not contain mental impressions of an attorney. Plaintiff submits that the purpose of the requested incident reports was to ascertain the facts surrounding the accident. Plaintiff highlights that, even if CLECO can show that the reports at issue were prepared in anticipation of litigation, plaintiff has substantial need of said reports and is unable to obtain the substantial equivalent by other means.

CLECO explained that Stephen Vedros and Scott Lewis are CLECO's electrical line workers who were deployed to the scene of the incident at issue. Following the incident, each handwrote a brief recitation of what they observed *under orders from the legal department*. CLECO contends that this case does not involve workers filling out a routine, required, pre-printed "incident report" form for use by CLECO for any number of business purposes, as plaintiff has attempted to characterize the linemen's handwritten notes. CLECO argues that these notes were handwritten only after the legal department ordered the workers to do so in the days following the incident.

As to the linemen's supervisor, Michael Polk, CLECO highlights his testimony that the linemen had no responsibility to write reports at the time of the incident and that the incident reports were handwritten for use by counsel during possible litigation, transmitted to the legal department and not used for any other purpose. Addressing substantial need, CLECO submits that plaintiff's blanket statement parroting the rule falls far short of the evidentiary showing necessary to overcome the work-product privilege.

Plaintiff's reply highlights, the following: (1) Scott Lewis's deposition that it was standard operating procedure (SOP) to get out a report after he responds to a call regarding an

outage or a wire down; (2) Polk's testimony that, after responding to a similar situation as this one, a report is generated called an "emergency ticket order" which shows a worker responded and completed the call; and (3) Stephen Vedros's testimony that both he and the other lineman did a handwritten report "to their supervisor."

In his supplemental reply, plaintiff advises the Court that CLECO did not turn over photographs taken of the scene until Polk was deposed. Additionally, neither Vedros nor Lewis remembered what they put in their reports.[2] Plaintiff provided the Court with copies of CLECO's instructions to employees, which provides in pertinent part:

> 1.2-3. Reporting Hazardous Conditions
> a. When an employee observed a hazardous condition that may cause injury or property damage or interfere with services, regardless of the department in which the condition exists, it shall be reported promptly to your supervisor. A hazardous condition shall not be left unattended or unguarded.
> b. An employee who receives a report of any hazardous emergency condition shall obtain the name of the informant, the exact location and nature of the trouble. The employee shall immediately refer this information to the person having responsibility for such matters.

## ANALYSIS

Although defendant claims both the attorney-client privilege and the attorney work product doctrine, it argues only that the documents are work product.[3] Under Fed. R. Civ. P.

---

[2] This is clear to the Court, having had the opportunity to compare the linemen's deposition testimony and their handwritten incident reports.

[3] To the extent defendant may be claiming that linemen's reports provided to the supervisor are attorney-client communications, it has failed to demonstrate how each document satisfies the requirements of the privilege. *See Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 & n. 7 (5th Cir.1985) (citing cases); *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473-74 (N. D.Tex. 2004). A general allegation of attorney-client privilege is insufficient to meet the defendant's burden. *See Nutmeg Insurance Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 510 (W. D. La. 1988).

4

26(b)(3), only documents prepared "in anticipation of litigation" are entitled to work product protection.[4]  The documents need not be generated in the course of an ongoing lawsuit, but must have been prepared because of the prospect of impending litigation and not for some other purpose.

This Court recognizes that prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced.  In light of the foregoing, the applicable test is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.  However, even though litigation is already in prospect, the converse is also true -- *i.e.*, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.[5]  Suffice it say, a document is entitled to work product protection if "the primary motivating purpose behind the creation of the document was to aid in possible future litigation."[6]

The factors relevant to determining the primary motivation for creating a document are "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance."[7]  If the document would have been created

---

[4] *See Dunn v. State Farm Fire & Casualty Co.*, 927 F.2d 869, 875 (5th Cir.1991).

[5] *See* Wright & Miller, Fed. Pract. & Proc. § 2024 (1994).

[6] *Electronic Data Systems Corp. v. Steingraber*, 2003 WL 21653414 at *4 (E. D. Tex. Jul. 9, 2003) (*quoting United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir.), *cert. denied*, 454 U.S. 862 (1981)).

[7] *Id*. at *5 (*citing Piatkowski v. Abdon Callais Offshore, L.L.C.*, 2000 WL 1145825 at *2 (E. D. La. Aug.11, 2000)).

without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation.

As reiterated by the court in *Electronic Data Systems Corp. v. Steingraber,* 2003 WL 21653414 (E. D. Tex. 2003):

> "If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery.... [T]he distinction between whether defendant's 'in house' report was prepared in anticipation of litigation is an important one. The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product.... A more or less routine investigation of a possibly resistible claim is not sufficient to immunize an investigative report developed in the ordinary course of business."[8]

Here, CLECO alleges that the linemen's handwritten incident reports were prepared in anticipation of litigation and would not have been prepared in such form but for the prospect of litigation. However, insufficient evidence is offered to substantiate this assertion. The record made in this case fails to show that the primary motivating purpose behind this incident investigation and resulting reports of the linemen was to aid in possible future litigation. CLECO's instructions to linemen -- 1.2-3 "Reporting Hazardous Conditions" -- requires a prompt report to the supervisor when an employee observes a hazardous condition. The linemen's reports were tendered to Supervisor Polk and it does not appear that either one were aware that their handwritten reports were prepared at the request of CLECO's legal department.

Lewis testified he was notified that a line was down via cellular telephone and he was also notified of the address by computer. Lewis testified that he arrived at the scene first, the fire

---

[8] *Id.* at \*\*5-6 (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc*., 709 F.2d 1109, 1119 (7th Cir.1983)).

truck was there and he called Vedros to help him set up his truck.  Lewis testified that he went up in the bucket, disconnected wire from the poles and took all of the photographs which were taken from the bucket.  He further testified that he did not look at the cable line at the breaking point and that he had no idea how the line broke.[9]

Vedros testified that he was notified by the dispatcher via telephone that a wire was down and that it fell on someone.  He was dispatched to the scene as a lineman.  Vedros testified that he was instructed by Mike Polk, his supervisor, to remove the wire, take photographs and bring everything back to him. Neither Mike Polk, nor Kaye Tucker (of CLECO's Legal Department) were at the scene with the lineman removing the wire ("just the fire department").[10]  Vedros testified that he took all of the photographs from the ground on the night of the incident and rolled up the wire after Lewis cut it down.  He placed the wire in his truck, brought it to the office and gave it Polk the next time he saw him.[11]  Finally, Vedros testified that, following this incident, both he and Lewis each wrote reports, which were turned into their supervisor.  Lewis testified that this was their responsibility and SOP.

The emergency response to the call regarding a line down by CLECO linemen, Lewis and Vedros, was performed in the ordinary course of CLECO's business.  Lewis was contacted by the dispatcher and he, in turn, contacted Vedros.  Thereafter, they contacted their supervisor, Polk, who instructed them to cut down the wire and to take photographs.  Most notably, the linemen's photographs taken at the scene at Polk's request were produced in discovery; however,

---

[9]Deposition of Scott Lewis at pp.22-40.

[10]Deposition of Stephen Vedros at pp. 41-49.

[11]Deposition of Stephen Vedros at pp. 52-53 , 60.

the related narrative report of their emergency response activities and personal observations in the ordinary course of business cutting down the wire, rolling it up and securing the scene were not. This Court is of the opinion that both of the linemen's photographs which were produced, as well as the linemen's related reports, were prepared in the regular course of business rather than "primarily for purposes of litigation." There is no suggestion that CLECO's legal department played any part in orchestrating either the photographic or written narrative of linemen describing their response to the downed wire report and observations at the scene. Considering all of the foregoing facts and circumstances, the aforesaid reports are discoverable.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Compel # 53 is GRANTED in that, no later than Friday, April 3, 2009, defendant shall provide copies of the handwritten incident reports of linemen Stephen Vedros and Scott Lewis.

New Orleans, Louisiana, this 27th day of March, 2009.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**